IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA EDWARD HICKS,                          6:13-cv-00596-MA

                    Plaintiff,           OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.


KATHRYN TASSINARI
ROBERT A. BARON
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, Oregon 97401

        Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

HEATHER L. GRIFFITH
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

        Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Joshua Edward Hicks, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant applications for DIB and SSI on June 4, 2009, alleging disability due to seizures, post-traumatic stress disorder (PTSD), degenerative disc disease, "balance issues," attention deficit hyperactive disorder (ADHD), and bipolar disorder. Tr. 139. His applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 8, 2011, at which Plaintiff was represented by counsel and testified.

On August 31, 2011, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, Plaintiff timely filed a Complaint in this Court.

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

Born on March 14, 1982, Plaintiff was 21 years old on the alleged onset date of disability and 29 years old on the date of the hearing. Plaintiff has a high school equivalency and past relevant work as a Cashier, Oil Changer, Hook Tender Helper, Road Crew Supervisor, Lumber Stacker, Janitor, and Truck Driver. Tr. 35, 145.

Plaintiff alleges his conditions became disabling on July 10, 2003. Tr. 182. Plaintiff testified about his limitations at the hearing and submitted an Adult Function Report and Seizure Questionnaire. Tr. 44-61, 180-88, 215-17. In addition, Plaintiff's wife, Lisa Hicks, testified at the hearing and submitted a Third Party Function Report and a Seizure Questionnaire. Tr. 61-72, 163-71, 211-14. Steven E. Mussack, Ph.D., conducted a Mental Health Assessment for purposes of Plaintiff's probation. Tr. 250-55. William A. McConochie, Ph.D., completed a Psychodiagnostic Evaluation and submitted an opinion for the record. Tr. 382-88. Robert Choi, M.D., one of Plaintiff's treating physicians, submitted an opinion for the record. Tr. 660-62. Joshua J. Boyd, Ph.D., reviewed Plaintiff's records and submitted a Psychiatric Review Technique. Tr. 391-404. Bill Hennings, Ph.D., reviewed the medical record and submitted a Mental Residual Functional Capacity Assessment. Tr. 524-26. Finally,

Martin Kehrli, M.D., reviewed the medical record and submitted a Physical Residual Functional Capacity Assessment.  Tr. 528-35.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).   Each step is potentially dispositive.  The claimant bears the burden of proof at Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 10, 2003.  See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 28.

At Step Two, the ALJ found Plaintiff's "somatoform disorder" and substance abuse were severe impairments.  See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 29-30.

At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 30-31.

The ALJ found Plaintiff has the residual functional capacity
(RFC) to perform a full range of work at all exertional levels, but
that Plaintiff was limited to only occasional contact with others.
Tr. 31-34.

At Step Four, the ALJ found Plaintiff is capable of performing
his past relevant work as a Cashier, Oil Changer, Hook Tender
Helper, Road Crew Supervisor, Lumber Stacker, Janitor, and Truck
Driver.  See 20 C.F.R. §§ 404.1565, 416.965; Tr. 35.

Accordingly, the ALJ found Plaintiff was not disabled within
the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff raises four primary issues on appeal.  First,
Plaintiff argues the ALJ erroneously failed to include his mental
limitations or seizure disorder at Step Two.  Second, Plaintiff
asserts the ALJ cited insufficient reasons to reject his testimony.
Third, Plaintiff submits the ALJ improperly rejected the medical
opinions of Drs. Mussack and Choi.[1]  Finally, Plaintiff alleges the
ALJ erroneously rejected Ms. Hicks's testimony.  Accordingly,
Plaintiff concludes the ALJ's Step Four finding was in error.

---

[1] Plaintiff also briefly argues that the ALJ improperly
rejected an opinion from David B. Lippincott, D.O.  The record,
however, only contains chart notes from Dr. Lippincott, not an
opinion as to Plaintiff's functional limitations.  Accordingly,
the ALJ only needed to consider Dr. Lippincott's chart notes as
part of the medical record from which the ALJ's decision derives
substantial evidence.

5 - OPINION AND ORDER

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.   **Step Two**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment is "severe" for Step Two purposes if it, in combination with other impairments,

6 - OPINION AND ORDER

"significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); See also Smolen, 80 F.3d at 1290. A claimant can only establish a medically determinable impairment at Step Two "if the record includes signs – the results of 'medically acceptable clinical diagnostic techniques,'" such as tests – as well as symptoms, *i.e.*, [the claimant's] representations regarding his impairment." Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005). Ultimately, however, Step Two "is a de minimis screening device to dispose of groundless claims," and an impairment or combination of impairments will only be found "not severe" if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). An error in failing to list a condition at Step Two is harmless if the ALJ considers the limitations posed by the allegedly omitted condition in formulating the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

## A. Mental Impairments

At Step Two, the ALJ declined to list Plaintiff's mental impairments – PTSD, ADHD, and bipolar disorder – as severe impairments. Tr. 29. The ALJ noted some disagreement between evaluating and reviewing psychologists concerning the diagnosis of these disorders, and concluded that they were non-severe. Tr. 29-

30.    The ALJ nonetheless discussed the opinion of each medical opinion concerning Plaintiff's mental health limitations, and in the RFC ultimately limited Plaintiff to only occasional contact with others.  Tr. 31-34.  At the hearing Plaintiff disclaimed any allegation of ADHD, PTSD, or bipolar disorder.  Tr. 58.

Because the ALJ considered each of the medical opinions concerning Plaintiff's mental health and assigned a functional limitation in the RFC based on Plaintiff's mental health limitations, it is clear that the ALJ considered the limitations posed by Plaintiff's mental disorders in the RFC.  Accordingly, any error in failing to designate Plaintiff's occasionally alleged mental disorders as severe at Step Two would be harmless.  See Lewis, 498 F.3d at 911.

**B.    Seizure Disorder**

Plaintiff next argues that the ALJ erroneously failed to include his seizure disorder, or, alternatively, "pseudoseizures," at Step Two.  The ALJ did not directly list any seizure disorder at Step Two, but did list a "somatoform disorder."  Tr. 29.

The ALJ declined to list a seizure disorder at Step Two because neurologic examinations, including EEGs and brain and cervical MRIs, produced unremarkable findings.  Tr. 29.  This determination is amply supported by the record, as Plaintiff underwent repeated MRIs and EEGs that consistently revealed normal or very mild findings.  Tr. 291-93, 573-74, 644, 655.  The only

8 - OPINION AND ORDER

test that came back with any finding was a September 13, 2010 brain MRI that revealed a "[s]ingle tiny nonspecific white matter focus," that Dr. Choi noted "could be a focus for the seizure, although it is difficult to tell." Tr. 655-56. The ALJ reasonably found that this single, equivocal, and mild objective finding is insufficient to establish a severe organic seizure disorder in light of a record that otherwise contains normal objective findings and, as discussed in further detail below, an abundance of inconsistent subjective presentations and statements. The ALJ did not err in omitting a seizure disorder as a severe impairment at Step Two.

Plaintiff is incorrect that the ALJ failed to list a disorder concerning Plaintiff's pseudoseizures at Step Two. The ALJ explicitly listed a somatoform disorder as a severe impairment at Step Two. Psychological disorders that cause physical symptoms such as seizures or convulsions, including "psuedoseizures" or "psychogenic non-epileptic seizures," are classified as somatic symptom disorders. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 318-21 (5th ed. 2013). Thus, the ALJ accounted for Plaintiff's pseudoseizures by listing a somatoform disorder at Step Two. Even if the ALJ had erred in failing to list pseudoseizures at Step Two, such error would be harmless because the ALJ thoroughly considered the medical evidence concerning Plaintiff's alleged seizures or pseudoseizures in his

discussion of the RFC.  See Lewis, 498 F.3d at 911; Tr. 31-34.  The ALJ's findings at Step Two are supported by substantial evidence.

## II.  **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Smolen, 80 F.3d at 1281-82.  Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so.  Id. at 1281.

If an ALJ finds the claimant's testimony regarding his subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive."  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

///

**A. Plaintiff's Testimony**

At the hearing, Plaintiff testified that his seizures began after a car accident in 2003 that caused him to be unconscious for two days and to undergo facial surgery. Tr. 49. Plaintiff reported that he walks with a cane that was prescribed by a rehabilitation specialist in 2009, but that the cane needed to be reevaluated and he is supposed to have a walker. Tr. 51-52. Because of his seizures and pain, Plaintiff testified that he has developed "eating disorders" that cause him to forego eating until 1:30 or 2:00 p.m. Tr. 52.

As to his seizure medication, Plaintiff reported that his doctor prescribed phenobarbital in a "last ditch effort" to control his seizures "down to a point that [he is] not having multiple per day," but that the medication causes him to be "not functional" and to lose awareness of the passage of time. Tr. 53-54. Plaintiff testified that in a good week on his medication he experiences seizures "one to three times a week, if not more." Tr. 55.

In his Adult Function Report, dated July 23, 2009, Plaintiff noted that in a typical day he wakes up, waters his garden and feeds his dogs, snacks throughout the day, watches television, sits outside, and eats dinner before going to bed. Tr. 180. Plaintiff reported he has not been able to "retain [his] balance" or "handle pills" since his conditions began. Tr. 181. Plaintiff noted that his balance issues cause him to fall while dressing and bathing,

and he is concerned about losing consciousness in the bath and drowning. Tr. 181. Plaintiff reported that he can cook frozen and simple foods, water his garden, mow the law, and pick up small items. Tr. 182. As to his activities outside the house, Plaintiff wrote that he does not drive, but that he shops for clothes, household items, and food. Tr. 183.

Plaintiff checked that his "serious seizures and neck and spinal damage" affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, understand, use his hands, and get along with others. Tr. 185. Plaintiff reported that he can walk one-quarter of a mile before needing five minutes of rest, and that he can only pay attention for approximately five minutes. Tr. 185.

In his undated Seizure Questionnaire, Plaintiff reported that his wife and mother-in-law have seen his seizures. Tr. 215. Plaintiff noted that he does not take seizure medication because the medications make it so he "cannot function," and causes him to "sit there and drool on [him]self." Tr. 216. Plaintiff reported that he has three types of seizures, including "Type 1" seizures which cause him to experience convulsions, fall down, and choke; "Type 2" seizures during which he "stare[s] off into space;" and "Type 3" seizures during which his "legs give out." Tr. 188, 216. Plaintiff noted that he feels "dizzy, disoriented, and sick" after each type of seizure. Tr. 216. Plaintiff reported he experienced

one "Type 1" seizure, approximately 23 "Type 2" seizures, and daily "Type 3" seizures in the preceding three months.  Tr. 217.

**B.    The ALJ's Reasons for Rejecting Plaintiff's Testimony**

The ALJ noted three primary reasons for rejecting Plaintiff's testimony.   First, the ALJ indicated Plaintiff's subjective complaints were "not reasonably consistent" with the medical evidence and that inconsistencies existed in the record.   Tr. 32. Second, the ALJ noted Plaintiff failed to seek mental health treatment and demonstrated noncompliance with prescribed treatment. Tr. 32-33.   Third, the ALJ noted that Plaintiff worked during the alleged period of disability and reported that he left the job for reasons unrelated to his alleged disabling conditions.   Tr. 33.   I conclude the reasons cited by the ALJ readily amount to clear and convincing reasons to reject Plaintiff's testimony.

**1.    Lack of Objective Evidence and Inconsistencies in the Record**

The ALJ's first reason for rejecting Plaintiff's testimony, lack of objective medical evidence supporting Plaintiff's allegations and inconsistencies in Plaintiff's reporting and medical presentations, is a compelling reason to reject Plaintiff's testimony.   The ALJ properly noted that Plaintiff's subjective complaints were not supported by objective medical evidence.   With respect to Plaintiff's allegations of frequent, severe seizures, an EEG study performed in January of 2009 was normal.   Tr. 293.   MRIs performed on Plaintiff's brain and cervical spine in early 2009

similarly revealed unremarkable findings. Tr. 291-92. A second EEG performed in September of 2010 was also normal. Tr. 573-74. A repeated brain MRI in September of 2010 revealed only a "[s]ingle tiny nonspecific white matter focus," and Dr. Choi noted it was "difficult to tell" whether that finding could be a focus for the seizure. Tr. 655, 656. Accordingly, the ALJ reasonably found that objective findings did not support Plaintiff's claims of frequent, severe seizures.

The ALJ also reasonably noted inconsistencies in Plaintiff's subjective reporting and presentations in the medical record. Indeed, the record is replete with such inconsistencies.

As noted above, at the hearing Plaintiff stated he was unconscious for two days after a car accident in July of 2003. Tr. 49. On October 12, 2009, Plaintiff reported to Dr. McConochie that he suffered a "kink in the brain stem" as a result of the accident. Tr. 383. On September 15, 2010, Plaintiff reported to a physician conducting an EEG that he was in an "unconscious state for 3 weeks" following the car accident. Tr. 573. In fact, Plaintiff was conscious when he arrived at the hospital following the car accident, and while he required facial surgery and three days of hospitalization, on discharge Plaintiff had "no residual symptoms from his closed head injury and concussion with the exception of headache." Tr. 226, 237. There was no reference to a "kink in the brain stem."

14 - OPINION AND ORDER

Plaintiff made several inconsistent presentations with respect
to his gait.   On March 10, 2009, Plaintiff exhibited several
inconsistencies on exam, but was prescribed a cane to help with
"gait instability and poor balance" of unknown cause.   Tr. 353-56.
The next week, on March 19, 2009, Robert J. Ballman, M.D., noted
that Plaintiff had a "gimpy gait on the right side" and that
Plaintiff "preferred to use the cane," but that "[a]t some point[s]
[Plaintiff] seemed to be confident in his gait and other times not.
It was inconsistent."   Tr. 279.   The next day, and again on April
23, 2009, with respect to Plaintiff's gait presentation, Dr.
Lippincott suspected "there is some embellishment in Joshua's
case."   Tr. 269, 276.   On May 1, 2009, when Plaintiff presented to
Lisa L. Lamoreaux, M.D., with shoulder complaints, Dr. Lamoreaux
observed Plaintiff "walk back and forth to x-ray, normal gait and
station."   Tr. 260.   Yet, on October 12, 2009, Plaintiff walked
with a cane at his evaluation with Dr. McConochie, and reported
that "[h]e is losing feeling in his feet."   Tr. 383.   On December
4, 2009, Dr. Lippincott concluded that "[t]here is not a reason to
think that there is a significant structural abnormality that would
cause his gait disorder," and while there was a history of
traumatic brain injury, Dr. Lippincott noted he did "not think that
accounts for the gait."   Tr. 412.   By October and November of 2010,
Plaintiff was again "able to ambulate independently."   Tr. 545,
576.   On June 12, 2011, however, Plaintiff was back to using a

15 - OPINION AND ORDER

cane. Tr. 626. Finally, as noted, at the August 8, 2011 hearing, Plaintiff reported he ambulates with a cane, and suggested that the severity of his condition made the cane insufficient. Tr. 51-52.

Plaintiff made inconsistent statements about side effects of seizure medications. As noted, at the hearing Plaintiff testified that he is not functional on his seizure medication and it causes him to not notice the passage of time. Tr. 54. In his Seizure Questionnaire, Plaintiff wrote that his seizure medications cause him to "sit there and drool on myself." Tr. 216. Similarly, on July 19, 2009, after Plaintiff reported having a seizure, Plaintiff told Thomas K. Seddon, M.D., that he was not taking anticonvulsant medication because he tried several that made him a "zombie." Tr. 431. These reports are in stark contrast to his report to Dr. Choi two months before the hearing, when he stated that he had "no significant side effects" from phenobarbital. Tr. 646.

Plaintiff was similarly inconsistent about whether he suffered from mental health conditions. On December 4, 2009, Plaintiff reported that he had problems with anxiety and PTSD. Tr. 410. Similarly, in a July 28, 2006 evaluation, Plaintiff reported having been diagnosed with bipolar disorder and PTSD. Tr. 672. As the ALJ noted, however, Plaintiff told Dr. McConochie that "[h]is employment efforts at present are primarily limited by leg problems." Tr. 383. Finally, at the hearing Plaintiff opined he

did not "show any of the symptoms" of any of the mental illnesses Dr. Mussack diagnosed after a 2007 evaluation.  Tr. 58.

Finally, Plaintiff made several unsupported claims throughout the record about various injuries and conditions.  On at least two occasions, Plaintiff represented to physicians that he was being evaluated for multiple sclerosis.  Tr. 555, 580.  There is no record of serious consideration of a multiple sclerosis diagnosis. At the October of 2010 appointment in which Plaintiff reported he was being examined for multiple sclerosis, Plaintiff reported his seizure disorder was "in the past."  Tr. 555.  On September 8, 2010, Plaintiff reported that his convulsive spells began after "he fell out of bed at the Lane County Jail" in 2005, contrary to other reports that his seizures began after the 2003 car accident.  Tr. 657.  Finally, on March 10, 2009, Plaintiff reported that in March of 2008 he "fell [twenty feet] out of a tree" but that his fall was "stopped by branches," and that in 2005 Plaintiff had a "drowning accident."  Tr. 474.  There is no other mention of these seemingly significant incidents in the record.

In sum, the ALJ's rejection of Plaintiff's testimony because his allegations were unsupported by objective medical evidence and because the record contains inconsistent statements and presentations are compelling reasons, supported by overwhelming record evidence, to reject Plaintiff's testimony.

2. **Failure to Seek Mental Health Treatment and Noncompliance with Prescribed Treatment**

The ALJ next rejected Plaintiff's testimony because Plaintiff did not seek mental health treatment and because the record contained instances in which Plaintiff failed to comply with prescribed medical treatment. An inadequately explained failure to seek medical treatment is a proper basis on which to discredit a claimant's testimony of disabling limitations. <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995); <u>Zerba v. Comm'r Soc. Sec. Admin.</u>, 279 Fed. App'x 438, 439-40 (9th Cir. 2008). Similarly, noncompliance with prescribed medical treatment is an appropriate reason to reject a claimant's testimony. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ reasonably cited Plaintiff's failure to seek mental health treatment as a reason to reject Plaintiff's equivocal allegation of disability based on mental illness. Indeed, outside of the evaluation by Dr. Mussack as a condition of probation, the evaluation by Dr. McConochie in regard to Plaintiff's disability application, and records from another probation-related evaluation first submitted to the Appeals Council, there is no record of Plaintiff seeking mental health treatment. Tr. 250-55, 382-88, 666-81. Indeed, on two occasions Plaintiff was provided the opportunity to receive mental health services, but Plaintiff failed to follow through both times, leading to the termination of treatment. Tr. 255, 666-67. The ALJ appropriately concluded that

18 - OPINION AND ORDER

Plaintiff's failure to complete mental health treatment was inconsistent with his occasional allegation of disability based on mental illnesses.

The ALJ also properly cited noncompliance with prescribed treatment as a reason to reject Plaintiff's testimony of disabling limitations.    As the ALJ noted, when Dr. Lamoreaux attempted to show Plaintiff exercises to help his alleged shoulder pain, Plaintiff demonstrated "an 'I can't do that' attitude" despite Dr. Lamoreaux finding Plaintiff "quite obviously capable of doing the exercises as based on his muscle bulk." Tr. 261.  Moreover, when Plaintiff did go to physical therapy, Plaintiff did not "follow[] through on the postural exercises given to him." Tr. 352.

In sum, the ALJ's citation to Plaintiff's failure to follow through with mental health treatment and failure to comply with prescribed medical treatment is a convincing reason to reject Plaintiff's allegations of disabling limitations supported by substantial evidence in the record.

### 3.    Employment During the Period of Disability

The third primary reason the ALJ gave for rejecting Plaintiff's testimony of disabling limitations was Plaintiff's employment at a temporary employment agency and a Jiffy Lube during the period of employment.    Indeed, in 2005 Plaintiff earned $3,194.93 in wages from Oregon Temporary Services, Inc., and in

2008 earned $1,334.40 in wages from Doorknob Enterprises Too, LLC. Tr. 134.

More convincing, however, are inconsistencies in Plaintiff's representations concerning the end of his employment at a Jiffy Lube in 2008. At the hearing, Plaintiff testified that he was terminated from Jiffy Lube because of a seizure he experienced at work. Tr. 48. As the ALJ noted, however, at Plaintiff's examination with Dr. McConochie, Plaintiff reported that his employment at Jiffy Lube ended "in the summer of 2008 when he had disagreements with the manager." Tr. 384. The ALJ reasonably cited Plaintiff's employment during the period of disability and his report that he was terminated from Jiffy Lube for non-disability related reasons to reject Plaintiff's allegations of disabling limitations.

I conclude the above reasons easily constitute clear and convincing reasons to reject Plaintiff's subjective testimony. The ALJ did not err in his consideration of Plaintiff's testimony.

### III. **Medical Testimony**

Plaintiff argues the ALJ erred in discrediting the opinions of Drs. Choi and Mussack. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the

physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

"'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

**A.  Dr. Choi**

Dr. Choi, one of Plaintiff's treating physicians concerning Plaintiff's seizure symptoms, submitted an opinion on August 4, 2011. In that opinion, Dr. Choi listed diagnoses of "seizure" and "diffuse subjective pain of unknown cause." Tr. 660. Dr. Choi noted that Plaintiff had "ongoing seizure [sic] [with] some response to medication." Tr. 660. As to Plaintiff's symptoms, Dr. Choi opined Plaintiff experienced "[d]iffuse pain, numbness, and

fatigue," while his signs included pain and MRIs of Plaintiff's brain, cervical spine, and lumbar spine with minimal abnormality. Tr. 661.   Dr. Choi opined Plaintiff would have to rest every one-to-two hours because of "subjective pain," Plaintiff's medications caused drowsiness, and Plaintiff would have to miss more than two days of work per month.   Tr. 661-62.

The ALJ rejected Dr. Choi's opinion because it was inconsistent with unremarkable objective testing, inconsistent with Plaintiff's activities of daily living including going to school, the opinion was speculative and lacked supporting documentation, and Plaintiff reported that his seizures were under good control shortly before Dr. Choi wrote the opinion.   Tr. 34.   Because Dr. Choi's opinion is contradicted by Dr. Kherli's reviewing opinion, the ALJ was required to cite specific and legitimate reasons to reject Dr. Choi's opinion.   <u>Lester</u>, 81 F.3d at 830-31.   <u>See also</u> <u>Evans v. Comm'r Soc. Sec. Admin.</u>, 320 Fed. App'x 593, 595 (9th Cir. 2009).

The ALJ's rejection of Dr. Choi's opinion because it was speculative is a compelling reason to discredit Dr. Choi's brief findings.   Notably, Dr. Choi's opinion acknowledged that the objective evidence showed minimal abnormalities, and noted that the symptoms and limitations were based on Plaintiff's "subjective pain."   Tr 660-61.   Indeed, Dr. Choi's diagnosis of a seizure disorder explicitly relied on Plaintiff's subjective reports, as in

his underlying chart notes Dr. Choi noted that Plaintiff's "description of this recent [seizure] event is highly suggestive of a true seizure disorder." Tr. 658. Dr. Choi made this finding despite unremarkable objective testing. Tr. 655. Especially in light of the manifest inconsistencies throughout the record and in Plaintiff's testimony, Dr. Choi's reliance on Plaintiff's subjective reports renders his opinion highly speculative.

The ALJ also reasonably discredited Dr. Choi's opinion on the basis of inconsistency with his own June and February of 2011 chart notes indicating that Plaintiff's seizures were under good control. Tr. 646, 649. Finally, the ALJ is correct that Dr. Choi provided no documentation or reasoning to support his opinion that Plaintiff would miss more then two days of work per month. Considering it is unclear what causes this very significant opined limitation, the ALJ appropriately rejected it because it was "brief, conclusory, and inadequately supported by clinical findings." Chaudhry, 688 F.3d at 671. In sum, I conclude the ALJ cited reasons that readily amount to specific and legitimate reasons to reject Dr. Choi's opinion.

**B.   Dr. Mussack**

Dr. Mussack conducted a Mental Health Assessment for purposes of obtaining appropriate diagnoses and developing treatment goals as part of Plaintiff's probation. Tr. 250. After conducting a lengthy interview with Plaintiff, Dr. Mussack diagnosed Plaintiff

with PTSD; dysthymia; impulse control disorder, not otherwise specified; panic disorder without agoraphobia; rule-out bipolar II disorder; and rule-out antisocial personality disorder. Tr. 253. Dr. Mussack assigned Plaintiff a GAF score of 50. Tr. 253.

The ALJ rejected Dr. Mussack's opinion, including the GAF score of 50, because the score was based on Plaintiff's functioning at that time and was not necessarily indicative of his functioning over a 12-month period, because the opinion was largely based on Plaintiff's subjective self-reporting, and the GAF scale does not directly correlate to a requirements for a finding of disability. Tr. 34. Because Dr. Mussack's opinion was contradicted by that of Dr. McConochie, the ALJ was required to cite specific and legitimate reasons to reject Dr. Mussack's opinion. Lester, 81 F.3d at 830-31.

The ALJ's rejection of Dr. Mussack's opinion because it was based on Plaintiff's subjective self-reporting is compelling. Indeed, Dr. Mussack's opinion was based almost entirely on his interview with Plaintiff. Dr. Mussack's opinion does not contain any record of objective testing. While Dr. Mussack made a few independent observations concerning Plaintiff's awareness, memory, concentration, and intellectual capacity, those findings were neither significant nor detailed. Tr. 252. In light of the very significant problems with Plaintiff's credibility identified by the

ALJ, Dr. Mussack's reliance on Plaintiff's self-reporting is a compelling reason to discredit his opinion.

Accordingly, I conclude the ALJ appropriately rejected Dr. Mussack's opinion. The ALJ properly weighed the medical testimony.

## IV. Lay Testimony

Plaintiff next asserts that the ALJ cited insufficient reasons to reject the testimony of Plaintiff's wife, Ms. Hicks. Lay testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

At the hearing, Ms. Hicks testified that she witnesses Plaintiff have a seizure approximately twice per month, but that Plaintiff experiences more seizures that Ms. Hicks does not witness while she is out of the house. Tr. 62. During grand mal seizures, Ms. Hicks testified that Plaintiff shakes on the ground, hits his head, vomits, and loses consciousness. Tr. 62. Afterward, Ms. Hicks stated, Plaintiff is disoriented, confused, cannot speak, and has blurry vision. Tr. 62. Ms. Hicks noted that, although Plaintiff's seizures have been "under control" recently, that term means Plaintiff's seizures have "somewhat slowed down from five to ten a week." Tr. 63. Throughout the remainder of her hearing testimony, Third Party Function Report, and Third Party Seizure

25 - OPINION AND ORDER

Questionnaire, Ms. Hicks described symptoms, limitations, and daily activities very similar to Plaintiff's testimony.

The ALJ discredited Ms. Hicks' testimony because it was similar to Plaintiff's testimony and inconsistent with unremarkable objective findings in the medical record. Tr. 33. Indeed, Ms. Hicks' testimony is very similar to Plaintiff's and suffers from many of the same flaws. For example, on June 12, 2011, two months before the hearing, Ms. Hicks reported to a physician that Plaintiff's "[l]ast seizure was 7 months ago." Tr. 626. Like the significant inconsistencies in Plaintiff's testimony, this was manifestly inconsistent with her hearing testimony that Plaintiff's seizures had only "somewhat slowed down from five to ten a week." Tr. 63. Moreover, as discussed above, just as Plaintiff's testimony was unsupported by the objective medical evidence, Ms. Hicks' reports about the frequency and severity of Plaintiff's seizures was unsupported by the medical record. Accordingly, I conclude the ALJ cited germane reasons to reject Ms. Hicks' testimony. The ALJ properly weighed the lay testimony.

///

///

///

///

///

///

26 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this ⟋6⟍ day of August, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge